NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 E 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 6:20-cr-00409-MC |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MARIAM GEVORKOVA,** | |
| Defendant. | |

INTRODUCTION

Defendant Mariam Gevorkova took a leading role in a large credit card bust-out conspiracy, using numerous stolen and synthetic identities on her way to defrauding financial institutions out of over $2.5 million. The proceeds of the fraud flowed back into an illegal marijuana operation that included two grows and a state-licensed shop in Corvallis, Oregon. Ms. Gevorkova should receive a 70-month prison sentence to account for her aggravated role in this conspiracy.

**Government's Sentencing Memorandum**                                                              Page 1
Revised Aug. 2019

## FACTUAL BACKGROUND

### A. The Offense Conduct

Starting as early as 2015, Ms. Gevorkova and her co-conspirators perpetrated a credit card "bust-out" fraud in the Corvallis, Oregon area. A credit card "bust-out" refers to a fraud scheme in which the perpetrators obtain credit cards for the purpose of making purchases and running up large balances with no intent to pay the amount owed. Bust-out schemes often include making initial payments on the credit cards in order to make the cards appear legitimate, leading to an increase in the credit limit. After making credit card purchases, payments are made to the cards from co-conspirator bank accounts that reduce the outstanding balances, allowing for additional purchases. After numerous purchases and payments are made, the co-conspirators report to their financial institution that the payments made to the cards were not authorized. The banks seek and obtain reimbursement from the card company and deposit those funds back into the account of the co-conspirator. No further payments are made on the credit cards, which results in losses to the financial institutions that are often substantially greater than the amount of the credit limit.

### i. "Yana K." Investigation

This case began with a report from Synchrony Bank regarding a loss of over $170,000 from the fraudulent use of eight credit cards issued to "Yana K.," an individual allegedly residing in Corvallis, Oregon. Following the initial report from Synchrony Bank, several additional financial institutions reported similar fraudulent activity conducted by several other individuals in the Corvallis area.

Agents found that the eight Synchrony credit card accounts were opened in Yana K.'s name using an address of a building later found to be leased by her coconspirators and being used by Ms.

Gevorkova and her coconspirators as an unlicensed marijuana grow.  Upon the opening of each account, the bank mailed a credit card to the address provided in the application.  In addition, all the accounts were applied for online using an IP address that resolved back to Corvallis Cannabis Club ("CCC").  Ms. Gevorkova and her co-conspirators, including Yegishe Nazaryan. Ararat Manukyan, and Lilit Gevorkova, owned and operated the business.

The investigation determined that Yana K. was not living at Corvallis Cannabis Club (CCC) or at the marijuana grow site.  Instead, Yana K. was a twenty-six-year-old female and citizen of Ukraine.  International travel records revealed that Yana K. was not in the United States at the time the credit cards were applied for or issued in her name.

Charges on Yana K.'s credit cards included thousands of dollars in items purchased from Amazon that were shipped to Ms. Gevorkova and Mr. Nazaryan, including the purchase of a $9,000 Hublot watch, along with other personal items and airfare.  The charges also included rent and utility payments at the marijuana grow and items consistent with those needed for construction of those marijuana grows, as well as for rent at CCC.

Co-conspirator bank accounts were used to pay down the balances of the credit cards so that more purchases could be made.  Then, Ms. Gevorkova or her co-conspirators called the banks and reported the payments as fraudulent, resulting in massive losses for the credit card companies.  In total, investigators uncovered over a dozen fraudulent Synchrony credit cards alone, resulting in losses of over $420,000.

       *ii.*     *Scope of the Credit Card Bust-Out Fraud*

The Yana K. Synchrony Bank credit cards represent a small subset of the fraud perpetrated by Ms. Gevorkova and her co-conspirators.  Ms. Gevorkova and her co-conspirators opened credit cards at numerous financial institutions, including Discover Bank,

Capital One Bank, Citibank, U.S. Bank, Bank of America, Wells Fargo, Chase Bank, Comenity Bank, and Oregon State Credit Union.

In total, Ms. Gevorkova and her co-conspirators opened well over 100 credit cards as part of the conspiracy, resulting in losses to financial institutions in excess of $2.5 million.

### iii.   *Marijuana Conspiracy*

Ms. Gevorkova and her co-conspirators used the proceeds of the credit card fraud conspiracy to establish and operate at least two marijuana grows and Corvallis Cannabis Club. Some of the marijuana grown at the warehouse was sold at CCC. Ms. Gevorkova and her co-conspirators purchased cheap marijuana from state-licensed marijuana distributors, entered it into Oregon's Cannabis Tracking System, then replaced this cheap product with marijuana grown at the illegal marijuana grow sites. They would then raise the price and sell to consumers at a substantial profit. Ms. Gevorkova and her co-conspirators would then sell the state-licensed and tracked marijuana illegally to others, including out-of-state purchasers. Marijuana at the grow sites was also largely sold to bulk out-of-state purchasers.

On June 12, 2018, agents seized over 1,200 marijuana plants from the warehouse – the same warehouse where fraudulent credit cards were sent as part of the fraud conspiracy. Agents also seized over 200 marijuana plants from a separate grow in Philomath that was owned and operated by the conspirators.

### B.  The Charges

Ms. Gevorkova was charged in a three-count information with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, and Conspiracy to Manufacture or Possess with Intent to Manufacture, Distribute, or Dispense Marijuana, in violation of 21 U.S.C. § 846.

C. **The Plea Agreement & Guideline Computations**

The parties agree with the following PSR computations:

| USSG Section | Offense Level |
|---|---|
| **COUNT 1: CONSPIRACY TO COMMIT BANK FRAUD** | |
| Base—<br>USSG § 2X1.1, 2B1.1(a)(1) | 7 |
| Loss—<br>USSG § 2B1.1(b)(1)(E)<br>more than $1.5 million and less than $3.5 million | +16 |
| Victims—<br>USSG § 2B1.1(b)(2)(A)<br>10 or more victims | +2 |
| Sophisticated Means—<br>USSG § 2B1.1(b)(10)(C) | +2 |
| Manager/Supervisor Role—<br>USSG § 3B1.1(b) | +3 |
| **Adjusted Offense Level** | **30** |
| **COUNT 3: DRUG CONSPIRACY** | |
| Base—<br>USSG §2D1.1(c)(8) | 24 |
| Maintained Premises—<br>USSG§ 2D1.1(b)(12) | +2 |
| Manager/Supervisor Role—<br>USSG § 3B1.1(b) | +3 |
| **Adjusted Offense Level** | **29** |
| **Greater of Adjusted Offense Levels** | **30** |
| Multiple Count Adjustment | +2 |
| Acceptance of Responsibility<br>USSG § 3E1.1 | -3 |
| **Total Offense Level** | **29** |
| **Resulting Guideline Range** | **97-121 Months** |

In light of the plea agreement, the government seeks a downward variance of 3 levels under 18 U.S.C. § 3553 and a downward departure of 4 levels under the guidelines, such that the Court would find the final guideline range to be **46-57 months.** A 24-month mandatory minimum prison sentence shall run consecutive to the sentences on Counts One and Three.

## ARGUMENT

### A. Government's Recommended Sentence

Mariam Gevorkova took a leading role in organizing and effectuating a large-scale credit card fraud operation centered in Corvallis. She used the proceeds of this fraud to feed a lifestyle of casino trips, luxury goods, and vacations. Moreover, she used the fraud proceeds to fund illegal marijuana grows and pay expenses at her and her co-conspirators' state-licensed marijuana shop, which cut expenses and lead to increased, and therefore illicit, profits. A 70-month prison sentence is appropriate to hold her accountable for her role in the conspiracies.

As the PSR highlights, this is not Ms. Gevorkova's first experience with credit card fraud or identity theft. In 2009, Ms. Gevorkova was charged and convicted of making unauthorized charges on a credit card at a high-end retailer. Investigators determined Ms. Gevorkova was ordering goods with stolen credit card information and having the items delivered to herself. A year later, in 2010, Ms. Gevorkova was charged and convicted of opening a credit card in the name of a deceased individual. She purchased thousands of dollars of merchandise on the credit card from another high-end retailer, later returning it for store credit, leaving an outstanding balance of over $17,000. During the investigation, officers found the fraudulent credit card in Ms. Gevorkova's new Mercedes convertible, as well as vehicle registration in the stolen identity's name. The car dealership later verified that the vehicle had been purchased fraudulently and it was returned.

Yet the previous frauds pale in comparison to the scope and extent of the credit card fraud conspiracy Ms. Gevorkova participated in here. Ms. Gevorkova and her co-conspirators opened well over 100 credit cards using both fictitious information and stolen identities. She and her co-conspirators racked up substantial balances and left the banks out to dry when they walked away from the cards, leading to a loss of over $2.5 million. Ms. Gevorkova not only participated in the fraud, but she started recruiting others to become involved. She even ensnared one of the employees at CCC to open bank accounts to pay off the credit cards, facilitating the fraud. Ms. Gevorkova then called the banks, claiming to be the employee's wife, and disputed the payments made to the fraudulent credit cards.

Over the course of two years, Ms. Gevorkova participated in a broad scheme to defraud and used those illicit proceeds to fund illegal drug activity. A 70-month prison sentence is sufficient but not greater than necessary to hold her accountable for her role in these conspiracies.

**B. Restitution & Forfeiture**

The parties agree that the court shall order restitution in the full amount of the victims' losses as determined by the court. The government recommends restitution be ordered in the amount of $2,552,164.69 to the victims outlined in the PSR.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Based on the foregoing, the government recommends that this Court impose a 70-month prison sentence with five years of supervised release.

Dated: November 2, 2022

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Gavin W. Bruce*_____
GAVIN W. BRUCE, OSB #113384
Assistant United States Attorney